# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CHRISTINE DAVIS**
**By his parent and next friend**
**D.D., A MINOR**
**Plaintiff**

                                    **Civil Action No.**
        **v.**                                   **1:05CV02176 PLF**

**DISTRICT OF COLUMBIA, <u>et al.</u>**
**Defendants**

---

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF</u>
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

____    **COMES NOW,** the Plaintiff, by and through her counsel, Tilman L. Gerald, Esquire and James E. Brown and Associates P.L.L.C and her Memorandum of Points and Authorities submitted in support of her Motion for Summary Judgment respectfully represents unto this Honorable Court as follows:

## I. BACKGROUND

On November 4, 2005, Plaintiffs brought this action requesting that this Honorable Court reverse the October 6th, 2005 Hearing Officer's Decision which denied D.D. the opportunity to complete his compensatory education services with an independent agency. More specifically, the Plaintiff requested that this Court issue a finding that the Hearing Officer abused his discretion by holding that a parent is obligated to accept a proposal for settlement. He further erred as a matter of law when he admitted settlement discussions notes into evidence. *See Plaintiff's Complaint ¶ 13; (hereinafter Compl.).* Christine Davis, Plaintiff, is the parent and/or guardian of D.D, who at all

times relevant hereto attended school in the District of Columbia Public Schools system ("DCPS"), and were residents of the District of Columbia ("D.C."). *Compl.¶ 5.*

On May 26, 2004 Plaintiff, through counsel, requested that DCPS comprehensively evaluated D.D. for special education services. *Compl.¶ 11.* Plaintiff requested that the following evaluations be completed: (1) a psycho-educational assessment; (2) a speech and language assessment; (3) formal classroom observation; (4) hearing and vision screening, and (5) a social history assessment. *See Exhibit 3 attached to Plaintiff's Complaint.* When DCPS failed to complete the evaluations Plaintiff, through counsel, forwarded a follow-up letter on August 5, 2004 to Hines Junior High School (Hines) and to DCPS' Office of Special Education regarding the status of the evaluations. *Compl.¶ 13; see Exhibit 3 attached to Plaintiff's Complaint.*

In the interim of awaiting testing, D.D. transferred to Southeast Academy (SEA), a DCPS Public Charter School, for the remainder of the 2004-2005 school year. *Compl.¶ 15.* On October 12, 2004, counsel for the Plaintiff forwarded another letter to SEA, to Hines, to DCPS' Office of Special Education and to its Office of Mediation and Compliance inquiring of the status of special education testing for D.D. *Compl.¶ 16.* During a telephone call, the principal informed Plaintiff's counsel that SEA was a DCPS Public Charter School and as a result, DCPS maintained the responsibility for conducting special education evaluations. *Compl.¶ 17.* When the requested evaluations were not performed, Plaintiff's counsel filed an administrative due process hearing request on October 18, 2004. *Compl.¶ 18.* In that hearing request the Plaintiff sought funding for independent assessments. Then on November 16, 2004, a settlement was reached between DCPS and the Plaintiff's counsel, whereby DCPS agreed to fund both the psycho-educational and speech and language assessments. However, if DCPS failed to complete a social history evaluation within 30

days, the Plaintiff could obtain the social history independently. *Compl.¶ 22.* The Settlement Agreement further provided that upon receipt of all evaluations, a MDT team would convene within twenty (20) school days to determine the D.D.'s eligibility, develop an IEP, determine placement and compensatory education services. *Id.*

After DCPS failed to respond to a letter regarding the social history, Plaintiff's counsel obtained the assessment and forwarded a copy thereof to DCPS on February 3, 2005. *Compl.¶ 24 & 25.* On February 4, 2005, Plaintiff's counsel forwarded a letter to Dwight Thomas, the Special Educational Specialist (monitor) for SEA, advising him that all the evaluations were completed and that an IEP meeting must be convened within twenty (20) school days. *Compl.¶ 28.*

As a result of DCPS failure to review the evaluations or convene a MDT meeting, a second due process hearing request was filed on March 4, 2005. *Compl.¶ 29.* The parties entered into a second settlement agreement on April 7, 2005, wherein DCPS agreed to convene an IEP meeting within twenty (20) school days to determine eligibility, to develop an IEP, to issue notice of placement, and to develop a compensatory education plan, if warranted. *Compl.¶ 30.* For a second time within five (5) months DCPS failed to comply with the previous settlement agreement or respond to the parent's request to schedule the meetings. A third administrative due process hearing request was filed on April 29, 2005. *Id.* Finally, on May 17, 2005 DCPS convened an eligibility meeting determining that D.D. had a learning disability and that he should receive fifteen (15) hours of specialized instruction per week, one (1) hour of counseling per week, and one (1) hour of speech services per week. *Compl.¶ 34; AR. at 102.* On May 27, 2005, the MDT team met to develop an IEP, in addition the team determined that sixty (60) hours of specialized instruction tutoring, as well as, five (5) hours of compensatory counseling and five (5) hours of compensatory

speech services were due to D.D. based on DCPS' delay.  *Compl.¶ 34 ; AR. at 112.*

At that meeting the educational advocate requested that the compensatory special education services be funded and provided at the Seeds for Tomorrow summer program.  *Compl.¶ 36; AR. at 118.* Although the MDT team agreed that a private summer program would benefit D.D., LEA, Dwight Thomas, indicated he wanted to review the Seeds of Tomorrow program to confirm availability prior to approval.  *Compl.¶ 37; AR. at 118.*  Within two weeks, the educational advocate forwarded a copy of the Seeds of Tomorrow brochure to Mr. Thomas for his review.  *Compl.¶ 38; AR. at 212,237.*  DCPS never responded and consequently Plaintiff was forced to file another due process hearing request on July 12, 2005.  *Compl.¶ 41; AR. at 57.*  In her complaint Plaintiff sought funding for Seeds of Tomorrow, transportation for D.D., a finding against DCPS, copies of all notices to be sent through Plaintiff's counsel, and reasonable attorney fees. *Compl.¶ 41; AR. at 58-59.*

On July 25, 2005, DCPS filed its Response to the Complaint wherein it stated in paragraph #2 that the allegations forming the basis of the complaint required no prior notice of action by DCPS, and that the Complaint should be dismissed or withdrawn as the signing attorney had attested to facts within the Complaint.  *Compl.¶ 44; R. at 78.*  On July 27, 2005 at 11:30 am, DPCS convened a resolution meeting ("Resolution Meeting") as required by IDEIA.  *Compl.¶ 45; R. at 21-22.*  Prior to the start of the meeting, parent and her counsel requested that discussions from the meeting remain confidential and that the information not be used in subsequent hearings.  *Compl.¶ 46 ; R. at 19.*  The meeting ended without the parties reaching an agreement.  *Compl.¶ 47; R. at 20,22.*

On July 28, 2005, Plaintiff, through counsel, filed a Motion for a Finding Against DCPS

4

as to all the allegations in the complaint due to DCPS' failure to file an appropriate response as required by the Individual with Disabilities Education Improvement Act, Pub L. No. 108-446, Sec. 101, § 615(c)(2)(B).  *Compl.¶ 48; AR. at 73.*  Plaintiff, through counsel, submitted a Motion to Strike the Resolution Meeting Notes, and to preclude the use of said notes at the hearing, as they represented discussions undertaken for the sole purpose of settlement. *Compl.¶ 53 & 55.*

DCPS did not respond to Plaintiff's Motion to Strike the Resolution Meeting Notes and therefore, at the September 14, 2005 Due Process Hearing ("Hearing") Plaintiff's Counsel raised two preliminary matters: 1) that the July 28, 2005 Motion for Directed Finding should be granted  as DCPS had failed to provide a Response as required by IDEIA and had also failed to respond to the Plaintiff's motion, 2) that the Resolution Meeting Notes and any testimony related to those discussions should not be admitted into evidence as they were settlement discussion <u>only</u> (and the Plaintiff had specifically asked that they remain confidential and not be used in any subsequent proceedings).  *Compl.¶ 59; A.R. at 184- 194[1].*

The Hearing Officer noted that DCPS had failed to comply with the applicable provisions of IDEIA in that it failed to file an appropriate response within the allotted time and indicated that he would grant the Plaintiff's motion for a Directed Finding until DCPS counsel and a witness for the Defendants to discuss what transpired at the Resolution Meeting.  *A.R. at  24*.  Based on the testimony of the unsworn witness (Mr. Thomas), the Hearing Officer admitted the  written document and testimony relating to those discussions over the objection of Plaintiff's Counsel.  *Compl.¶ 60 ; A.R. at 194-195.*  The Hearing Officer opined that the Plaintiff had no right to request attorney fees

---

[1] Administrative Record produced by the District of Columbia does not contain a complete numbers. Plaintiff has inserted her own numbers beginning at page 182.

during a resolution meeting, and that to do so or to be advised to do so was frustrating the process of the resolution meeting. *Compl.¶ 61; A.R. at 261-264.*

In addition, he determined that Plaintiff frustrated the process by not accepting the settlement proposal made by DCPS, even though  he was aware that the proposal addressed only partial relief Plaintiff requested in the Complaint and that it allowed only for reimbursement once the program at Seeds of Tomorrow was completed. *Compl.¶ 61; Id.* The Hearing Officer dismissed the Complaint with prejudice. *Compl.¶ 62; AR. at 5.*

## II. <u>STANDARD OF REVIEW</u>

### *A.* <u>SUMMARY JUDGMENT</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when the pleadings and the evidence demonstrate that "...there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists..." The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The party seeking summary judgment may successfully support its motion by informing the district court of the basis of its motion and identifying those portions of the record including the pleadings, depositions, answers to interrogatories, as well as admissions on file together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.  Fed.R.Civ.P. 56(c).

There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving

party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *also Matsushita Elec. Indus. Co.*

*v. Zenith Radio*, 475 U.S. 574, 587 (1986).   Facts and inferences drawn from those facts must be

viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-

moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

"Summary judgment is appropriate if the non-movant fails to offer' evidence on which the jury could

find for the [non-movant]."  See *Holbrook v. Reno,* 196 F.3d 255, 259-60(D.C. Cir. 1999); see also

*Anderson, supra.,* at 249-50.

Once  a proper summary judgment motion is filed, the burden then shifts to the non-

moving party to produce "specific facts showing that there is a genuine issue for trial." FED.R.CIV.

P. 56(e); *Anderson*, 477 U.S. at 250. The non-moving party, to establish that a genuine issue for trial

exists, must do more than simply show there is some metaphysical doubt as to the material facts.

*Matsushita Elec. Indus. Co.* 475 U.S. at 586.

## B. JUDICIAL REVIEW OF AN ADMINISTRATIVE DECISION UNDER IDEIA

A party aggrieved by the findings and decisions rendered during the administrative due

process proceedings is entitled to bring forth a civil action in either a state or federal court without

regard to the amount in controversy.  20 U.S.C. § 1415 (i)(2).  The reviewing court "shall receive the

records of the administrative proceedings, shall hear additional evidence at the request of a party, and

basing its decision on the preponderance of the evidence, shall grant such relief as the court

determines to be appropriate."  20 U.S.C. § 1415 (i)(2); 34 C.F.R. §305.512(b)(3).  The applicable

standard of review requires that "a party challenging [an] administrative determination must

[shoulder] the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *See Kerkam v. McKenzie*, 862 F.2d 884, (D.C. Cir. 1989) ("Kerkam I"). Thus, an administrative determination "without reasoned and specific findings deserves little deference." *See Kerkam v. Superintendent*, D.C. Pub. Schs., 931 F. 2d 84, 87 (D.C. Cir. 1991) ("Kerkam II"). In interpreting "the preponderance standard of review", the Supreme Court noted in Rowley, that it is not a review that equates into an "unfettered de novo review". *See Board of Educ. Hendrick Hudson Central School Dist. Westchester County v. Rowley*, 458 U.S. at 206, 102 S. Ct. 3034; Courts must give administrative proceedings "due weight,"(*see also Simmons v. District of Columbia*, 355 F.Supp 2d. 12 (D.D.C 2004)) and [f]actual findings from administrative proceedings are considered prima facie correct." *Id.* (Quoting *S.H. v. State Operated Sch. Dist. of the City of Newark*, 336 F. 3d 260, 270 (3d Cir. 2003)). Courts may not substitute their own views for [that] of the hearing officer, (*id.* at *Rowley* 206; *see also Argueta v. Government of the District of Columbia,* 355 F. Supp. 2d. 408 (D.D.C 2005)*; Shaw v. Dist of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002)), and a court upsetting a hearing officer's decision "must a least explain its basis for doing so." *District of Columbia v. Ramirez* , 355 F.Supp. 2d. 63 (D.D.C 2005). Consequently, when neither party seeks to supplement the administrative record with additional evidence, a motion for summary judgment will operate as a motion for judgment based on the evidence of record. 20 U.S.C. § 1415(i)(2)(B); *Id*. at Ramirez, 355 F.Supp. 2d. 63 (D.D.C 2005).

The Hearing Officer erred as a matter of law when he admitted the Defendant's offer to compromise into evidence. This error runs afoul of the law as written and Rule 408 of the Federal Rules of Evidence and as such this Court should grant the Plaintiff's motion for summary judgment reversing the October 6, 2005 Hearing Officer's Determination.

## III. ARGUMENT

### A.    THE HEARING OFFICER ERRED AS A MATTER OF LAW WHEN HE ADMITTED EVIDENCE OF SETTLEMENT DISCUSSIONS INTO THE RECORD

The Hearing Officer erred as a matter of law committed when he admitted into he record both testimonial and documentary evidence of the discussions of the parties that transpired a the statutorily mandated resolution meeting on July 27, 2005. *A.R. at 1-6; 182 et. seg*. He then utilized that evidence, without more, to serve as the foundation for his decision to dismiss the plaintiff's complaint at the administrative level. *Id*. The decision to admit the aforementioned evidence is proscribed by Rule 408 of the Federal Rules of Evidence which precludes the admission of settlement discussions into evidence. *See F.R.E. 408 (2006)*. Specifically, Rule 408 provides "...Evidence of (1)furnishing or offering or promising to furnish, or (2) accepting or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or the invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible..." *Id.* Albeit the Rule does not require the exclusion of evidence, presented during the course of settlement negotiations, that may otherwise discoverable or evidence offered for another purpose, e.g., to show bias or prejudice, to show proof of effort to obstruct a criminal investigation, negativing a contention of undue delay, evidence that demonstrates a failure to mitigate damages is excluded under the Rule if the offer was made during settlement negotiations. See *Pierce v. F. R. Tripler & Co.,* 955 F.2d 820, at 827 (2dl Cir. 1992).

In the case sub judice, it is uncontroverted that the discussions between the parties at

the July 27, 2005, resolution meeting were in the context of settlement discussions and are therefore covered by the rule.  Consequently, discussions between parties in a complaint brought under the IDEIA, which mandates that the local school district convene a meeting between the parties "...to encourage the parties to resolve the issues in dispute promptly and informally..." See *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, at 653 (4th Cir. 1988) citing with approval, *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097. At 1106 (5th Cir. 1981).  Therefore, to determine whether the statements are covered by the rule, the inquiry to be made is whether the statements or conduct were intended to be part of the negotiations for compromise.  *Id. at Fiberglass*, 856 F.2d 652, at 653. Given the undisputed record in this case, the answer to the foregoing inquiry must necessarily be in the affirmative as the statute specifically requires the parties to meet and to pursue settlement discussions informally.

To wit, the testimony relied upon by the Hearing Officer to support his erroneous ruling is derivative of the settlement discussions that occurred at the resolution meeting as represented in the resolution notes and of the testimony educed. The reason(s) for the failure of the parties to achieve a resolution is of no moment here and accordingly should not have been of any moment at the administrative due process hearing either. The gravamen of the issue is the admissibility of conversations, conduct and discussions that occurred in an environment in which the parties were compelled to hold statutorily mandated settlement discussions.  Any conversations, discussions or conduct arising out the July 27, 2005 meeting and any reference thereto, were protected by Rule 408 and therefore were inadmissible.  *A.R. at 18; 182 et. seq.*  The notes of the resolution meeting that were offered by the Defendants and admitted by the Hearing Officer over both the written and oral objections of the Plaintiff,  did not fall within the purview of any exception to Rule 408.  *A.R. at 18;*

10

*182 et. seq.* The notes were offered by the Defendants for the single purpose of proving the invalidity of Plaintiff's claims, nothing more. The rationale enunciated by the Hearing Officer for admitting the resolution notes and the subsequent testimony, to determine compliance with the statute, clearly runs afoul of the established conventions of evidence generally and more specifically Rule 408. Moreover, if he earnestly believed that the statute posited upon him a duty to insure compliance, he then could have admitted the subject notes for that limited purpose only. He well exceeded any perceived responsibility that he had with regard to compliance, and in so doing he failed to provide, and indeed he was absent, a cogent and/or compelling justification that would warrant the admissibility of the said notes.

Hence, the actions of the impartial hearing officer in appointing himself the czar of resolution meetings without authority, apparent nor implied, knowingly admitting notes of settlement discussions maintained by the Defendants, and delving into conversations between Plaintiff and her counsel can not and should not be tolerated in any circumstance. If this ruling is allowed to stand and the Defendants are allowed to use conversations arising out of settlement negotiations, the stated purpose for resolution meetings will die a slow death for to do so would discourage rather than encourage litigants such as the Plaintiff in this case to participate with a reasonable level of confidence in these sessions. Ergo, full and open discussion and disclosure would be thwarted, thereby creating a hindrance to furthering public policy that favors settlements. See *Fiberglass Insulators Inc., supra.* at 654.

If this Honorable Court condones the admissibility of notes taken at a resolution meeting and any subsequent testimony relating thereto, participation in resolution meetings become a exercise in futility because parties, such as the Plaintiff in this matter, would have little incentive

11

to engage in open and meaningful discussion of their claims. Plaintiffs would have great reluctance and trepidation about engaging in discussions with the Defendants relating to the facts of their case if they know that those discussions, which had been and were an integral part of settlement negotiations, would be used against them later if settlement discussions fail as was the case in this matter. "...The present rule fosters free discussion in connection with negotiations and eliminates the need to determine whether the statement if not expressly qualified "falls within or without the protected area of compromise..." See *Rauch, supra.* at 1106.

Rather than conducting a hearing on the merits of Plaintiff's claim after he admitted the resolution notes to purportedly confirm compliance with the statute, the Hearing Officer restricted the hearing and the testimony to what occurred at the resolution meeting. A.R. 182 *et seq.* This was a blatant abuse of any discretion with which he may have been clothed and constituted a grave disservice to persons similarly situated as the Plaintiff. *See A.R. at 1-6.* If the resolution meeting does not result in a settlement to the satisfaction of the parent and memorialized by a signed settlement agreement, the applicable provisions of the IDEIA provides that within thirty (30) days, the complaint may proceed to a hearing on the merits. *See* 20 U.S.C. 1415(f). In this case, the parties did not reach a resolution of the issues in dispute, yet Plaintiff was not provided a hearing on her complaint. The Hearing Officer committed reversible error in admitting the resolution notes in to the record and Plaintiff consequently is entitled to summary judgment on this issue.

## B. A PARENT IS NOT OBLIGATED TO ACCEPT AN OFFER OF SETTLEMENT

Contrary to the Hearing Officer's Decision Plaintiff is not required to accept any offer tendered by the Defendants. In the instant case, the Hearing Officer erroneously held that the offer

tendered by the Defendants at the resolution meeting constituted  "full satisfaction" of Plaintiff's claims.  A.R. at 5.  However, the record is quite clear that the subject offer did not address all of the issues and the relief that Plaintiff sought in her Due Process Hearing Request.  A.R. at 182 *et seq*. Specifically, the offer failed to satisfactorily resolve the issues of funding, transportation and attorneys fees.  Id.  The offer to reimburse the Plaintiff for the cost of D.D. attending the Seeds of Tomorrow summer program up to $2,100.00, because Plaintiff did not have the financial resources available to pay for the costs of the camp, then await reimbursement from the Defendants. The offer as configured by Defendants was one that they knew Plaintiff could ill afford to accept, yet Defendants  made the offer anyway.  Additionally, there was no consideration provided for transportation which was part of the relief requested by Plaintiff. Nor were Defendants willing to address the issue of Plaintiff's reasonable attorney's fee.

Entangled in the issue of  whether discussions that occur during settlement negotiations are admissible in administrative proceedings, is the issue of whether a Hearing Officer has the capacity to force a party to accept an offer of settlement at a hearing that has been previously rejected.

The obvious answer is in the negative.  Congress has not specifically allocated any such authority to the Hearing Office nor is he otherwise vested with discretion that would serve to abrogate the rights that are guaranteed to the parent under the applicable provisions of the IDEIA. 42 U.S.C. §1415(f) intended to provide a means by which the litigants to an administrative due process complaint could meet and hopefully achieve a resolution of the outstanding issues.  It certainly cannot be reasonably inferred that Congress intended to force upon unsuspecting Plaintiffs a settlement that he or she did not find was to this or her satisfaction.  See 42 U.S.C. §1415(f).  The

13

plain language "to the satisfaction of the parent" was carefully crafted, the intent rather obvious, and incapable of uncertainty as to its meaning and application. It does not mean to satisfaction of the Hearing Officer or to the satisfaction of the local school district. Rather, any settlement achieved necessarily has to be to the satisfaction of the parent. This case was not resolved to the satisfaction of the parent. The imposition of the will and desire of the Hearing Officer upon the Plaintiff during the administrative due process hearing was violative of rights under and procedural safeguards specifically guaranteed to Plaintiff under the IDEIA.

Since the Hearing Officer's Decision is irreparably tainted by the improper admission of evidence in violation of Rule 408 of the Federal Rules of Evidence, there is no factual nor legal basis upon which it can reasonably be sustained. Accordingly, Plaintiff is entitled to summary judgment on this issue as there is not dispute as to any material and thusly, the Hearing Officer's Decision should be vacated and set aside forthwith.

### C. DCPS' CONDUCT UNDERMINES THE PARENTS RIGHT TO COUNSEL

By refusing to entertain discussions relative to the payment (reimbursement) of attorneys fees incurred by the Plaintiff at the resolution meeting, Defendant DCPS made a conscious effort to undermine the right of Plaintiff to be represented by competent counsel. A.R. at 19-20. The foregoing is perhaps representative of the dismal manner in which DCPS has chosen to administer special education in the District of Columbia. As the court stated in *Johnson v. District of Columbia*, 190 F.Supp. 2d 34, at 41, (D.D.C. 2002), the offer to settle a Plaintiff's claim under IDEIA premised upon a waiver of reimbursement of attorneys fee, "...in themselves violate, and are part of an ongoing policy of violating, IDEA's right to counsel provision..." Id. The failure of DCPS to discuss, to entertain or to make provision for the reimbursement of attorneys fees incurred by Plaintiff,

essentially was a demand for a waiver and could well violate 20 U.S.C. §1415(h)(1), as it would unequivocally undermine the efforts of Plaintiff to obtain unconflicted representation by her counsel. See *Johnson, supra.* at 41.  Judge Sullivan also stated that "...the conduct of the DCPS during the administrative hearing requested by plaintiffs to challenge the waiver provision also raises serious questions about DCPS' intent to interfere with plaintiffs' legal representations."  Id.

As a procedural safeguard, parents who file due process complaints are afforded the opportunity to be "accompanied and advised by counsel and individuals with special knowledge or training with respect to the problems of children with disabilities. . . ." 20 U.S.C 1415 (h)(1). In the case at bar, DCPS' vindictive conduct leaves no question that DCPS is attempting to deny and interfere with a parent's rights guaranteed under IDEIA.

At the Resolution Session Meeting, Plaintiff was advised by representatives of DCPS that complaints can be filed without an attorney.  The foregoing statement was made after the Plaintiff expressed her concern that DCPS had not adequately addressed or made provision for the resolution of the issue of attorney's fees, as well as the issue of transportation services for the student.  DCPS's actions clearly represented an attempt to unfairly interfere with an existing attorney client relationship and otherwise dissuade Plaintiff from retaining competent representation with respect to the special education issues confronting her son. The right to counsel is guaranteed by and is an integral part of the IDEIA.

In its two-part analysis, this Court recognized that the IDEA statutorily guaranteed a parent the right to obtain competent and legal representation and further entitled a parent to

reasonable attorney fees. Moreover, in comparing *Buckhannon*[2] and *Jeff D.*[3] the court determined that the Supreme Court's holding in *Buckhannon* and *Jeff D*. did not preclude an award of fees to plaintiffs who settle IDEA claims during either administrative or judicial proceedings. In addition, the Court noted that any policy or practice that intentionally or vindictively denies fees to all settling plaintiffs, consequently conflicted with the fee provision of the Act as well. *Johnson* at 44.

   In the case at bar, the refusal of DCPS to include discussion of a disposition of the attorney fee issued raised by the Plaintiff at the resolution meeting was tantamount to imposing a waiver of fees to the settlement offer. This is a particularly noisome proposition especially given the fact that it was the lack of action on the part of DCPS that caused the Plaintiff to incur attorney's fee in the first place. The court, in *Johnson, supra.* at 42, stated that "...[T]he District through the creation of policy can not refuse to obey the federal law that allows for attorney fees in these cases, and that was explicitly designed to encourage and to provide legal representation for parents of disabled children. The only body with the authority to amend IDEA is Congress itself." The version of the IDEA which governs the proceedings of this case was not amended as of the date of the resolution meeting was convened in July 2005, nor was it amended at the time the administrative hearing was held. Therefore absent any amendment thereto by Congress, DCPS was obligated to obey the law with regard to the fee provision set forth in IDEIA. The representation made by DCPS representatives that attorney fees cannot be discussed at resolution meetings is indicia of a policy calculated to disobey existing federal law for which an appropriate admonition is required. A.R. 20.

---

  [2]*Buckhannon Board and Care Home Inc., v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L.Ed. 2d 855 (2001).

  [3]*Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986).

## IV. <u>CONCLUSION</u>

**WHEREFORE**, Plaintiff respectfully prays as follows:

1.      That this Honorable Court enter an Order granting her Motion for Summary

        Judgment;

2.      That this Honorable Court enter an Order setting aside and/or vacating the

        hearing Officer's determination issued on October 6, 2005;

3.      That this Honorable Court enter an Order awarding Plaintiff reasonable

        sum  as attorney fees incurred at the administrative due process hearing;

4.      That this Honorable Court enter an Order awarding Plaintiff reasonable
        attorneys fees incurred in the case sub judice and assess all costs to
        Defendants; and

5.      And for such other and further relief as to this Honorable Court is just and
        equitable under the circumstances.

 

 

Respectfully submitted,

     /s/

_____

Tilman L. Gerald
Unified Bar No. 928796
James E. Brown & Associates, PLLC
1220 L Street, N. W., Suite 700
Washington, D.C. 20005
202.742.2000
202.742.2098-fax

**ATTORNEY FOR PLAINTIFF
CHRISTINE DAVIS**

April 10, 2006