## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTINE DAVIS,<br>Parent and next friend of D.D.,[1] a minor,<br><br>      Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.,*<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-2176 (PLF/DAR) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, Defendants here move for summary judgment in this matter. The basis for this motion is that Plaintiff's challenge to the hearing officer's determination ("HOD") in this case lacks merit because there was nothing improper in that decision.

A memorandum of points and authorities, a statement of material facts as to which there is no genuine issue and response to Plaintiff's statement of material facts, and a proposed order are attached hereto.

                                    Respectfully submitted,

                                    ROBERT J. SPAGNOLETTI
                                    Attorney General of the District of Columbia

                                    GEORGE C. VALENTINE
                                    Deputy Attorney General
                                    Civil Litigation Division

                                    **/s/ Edward P. Taptich**
                                    EDWARD P. TAPTICH [#012914]
                                    Chief, Equity Section 2

---

[1] The minor will be referred to as D.D., pursuant to LCvR 5.4(f)(2).

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
Eden.Miller@dc.gov

June 13, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTINE DAVIS,<br>Parent and next friend of D.D., a minor,<br><br>      Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.,*<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-2176 (PLF/DAR)

**MEMORANDUM OF POINTS AND AUTHORITIES IS SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case is brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* At issue in the present case is whether the Hearing Officer properly considered Resolution Meeting Notes in determining the outcome of the administrative hearing.

Under the IDEA, disabled students are entitled to a free appropriate public education ("FAPE"). IDEA, 20 U.S.C § 1412(a)(1). A team consisting of the student's parents, teachers, and other educational specialists, meet and confer in a collaborative process to determine how best to accommodate the needs of the student to provide a FAPE. 20 U.S.C. § 1414(d)(1)(B). An individualized education program ("IEP") is the written statement from that meeting, which includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met. 20 U.S.C. § 1414(d)(1)(A); 20 U.S.C. §

1401(11).  When a parent believes that his or her child is not receiving a FAPE, the parent may file a due process complaint.

Section 1415(f)(1)(A) provides that, "whenever a complaint has been received under subsection (b)(6) or (k) of this section, the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."  The complaint must concern a matter related to providing the child with a FAPE, which may include such issues as the identification, evaluation or educational placement of the child.

Upon receipt of such a complaint, DCPS must convene a "resolution meeting" prior to holding a due process hearing.  20 U.S.C. §1415(f)(1)(B).  At the meeting, school personnel and the parent are to discuss resolution of the complaint.  *Id.*  If the parent is not satisfied that the local educational agency has resolved the complaint within 30 days of receipt of the complaint, the parent may proceed to a due process hearing.  20 U.S.C. § 1415(f)(1)(B).  Should the case move on to a due process hearing, the decision issued by the impartial hearing officer is the final agency decision and can be appealed in federal or local court.  20 U.S.C. § 1415(i)(2).  The prevailing party in an action can receive attorneys' fees, but not for resolution sessions.  20 U.S.C. § 1415(i)(3).

## <u>STATEMENT OF THE PERTINENT FACTS</u>

D.D. is a minor living in the District of Columbia who has been found eligible for special education services.  HOD, R. at 4.  D.D. currently attends M.M. Washington Career Senior High School, a school within the DCPS system.  R. at 53.[2]  On May 27, 2005, an IEP team convened to discuss compensatory education, pursuant to settlement agreements between D.D. and DCPS.  IEP Meeting Notes, R. at 32.  At the meeting, the team determined that D.D. was entitled to 60 hours of specialized instruction in the form of tutoring, as well as five hours of counseling and five hours of speech and language therapy.  Compensatory Education Plan ("Plan"), R. at 30.  The Compensatory Education Plan developed at the meeting was signed by the team members, including the parent and her advocate.  *Id.*

According to the Plan, compensatory education services were to begin in September of 2005, with the option of starting in July of 2005 with a private provider, subject to DCPS approval.  Plan, R. at 30; IEP Meeting Notes, R. at 34.  On July 12, 2005, Plaintiff filed its Due Process Complaint, alleging that DCPS denied D.D. a FAPE when DCPS did not begin compensatory education services in July of 2005, with the parent-selected, private provider, Seeds of Tomorrow.  Due Process Complaint, R. at 176.  DCPS filed its Response to Plaintiff's Due Process Complaint on July 25, 2005 (R. at 166), and on July 27, 2005, a Resolution Meeting convened.  Resolution Meeting Notes, R. at 19.

At the meeting, the designated local education agency representative ("LEA") for DCPS, Resolution Specialist Elizabeth DeZiel, offered to immediately fund D.D. at Seeds of Tomorrow in satisfaction of D.D.'s claim.  *Id.*  According to the Resolution Meeting Notes, the parent stated

---

[2] During the 2004-2005 school year, D.D. attended the Southeast Academy of Scholastic Excellence Public Charter School.  HOD, R. at 3.  On June 30, 2005, Southeast Academy's charter was revoked.  DCPS' Motion to Dismiss, R. at 14.  For the 2005-2006 school year, D.D. enrolled in M.M. Washington Career Senior High School, a school within the DCPS system with a special education program.  R. at 53.

that she was receptive to what the LEA offered with respect to educational matters, but was concerned about attorneys' fees (which her attorney discussed with the parent several times during the meeting). R. at 19-20. The Notes also indicate that the parent's attorney at the meeting—Marshall Lammers[3]—was whispering in the parent's ear constantly and "seemed to be delaying the process." R. at 19-20. This is consistent with the September 14, 2005, testimony of both DCPS Attorney Advisor Katherine Rodi and DCPS Special Education Placement Specialist and Monitor Dwight Thomas,[4] who also attended the Resolution Meeting. T. at 14-15, 36, 38, 63-65. Further, Mr. Lammers testified at the September 14, 2005, hearing that he discussed with and advised the parent about attorneys' fees, in addition to other issues, at the meeting before she raised it during the meeting. T. at 76-77.

Ms. Rodi, who attended the meeting as DCPS' counsel, testified that the parent stated that she would not accept the DCPS offer because attorneys' fees were not included in the offer. T. at 64. Ms. Rodi and Mr. Thomas testified that Mr. Thomas, Ms. DeZiel, and Ms. Rodi were all in agreement that attorneys' fees were not properly part of the Resolution Meeting discussions and repeatedly conveyed that to the parent and her counsel. T. at 65. The Meeting Notes comport with this. R. at 19.

The Resolution Meeting Notes indicate that at the beginning of the meeting, the parent asked if the meeting was to be confidential. R. at 19. The notes state that "[t]he LEA cannot agree to that given this is to be a conversation; we are not at trial or mediation." *Id.*

---

[3] In her testimony at the hearing, DCPS Attorney Advisor Katherine Rodi, who attended the Resolution Meeting as DCPS' counsel, objected to Marshall Lammers acting as the parent's counsel because, at the time, he was not barred in the District of Columbia (and his supervising attorneys were not present). Rodi Testimony, T. at 64.
[4] Plaintiff wrongly states that Dwight Thomas was an unsworn witness. Plaintiff's Motion at 5. The transcript states that "Dwight Thomas was called as a witness and, having been first duly sworn by the Hearing Officer was examined and testified as follows … " T. at 25. Regardless of this, two other witnesses, Ms. Rodi and Mr. Lammers, offered testimony consistent with Mr. Thomas' testimony.

Also, according to the Resolution Meeting Notes, the meeting ended without resolution at the parent's request.  R. at 20.  On July 29, 2005, Plaintiff notified the Student Hearing Office that no resolution was reached between the parent and DCPS, and requested a due process hearing.  R. at 155.

On September 14, 2005, a hearing convened.  HOD, R. at 1.  The Hearing Officer accepted into the record the parties' Five Day Disclosure Notices with attached exhibits, including DCPS' Amended Disclosure Statement, which was timely submitted (R. at 11-47, 50-147) and heard the testimony of five witnesses: Christine Davis, D.D.'s mother; Marshall Lammers, counsel for the parent[5] at the Resolution Meeting; Katherine Rodi, DCPS attorney advisor at the Resolution Meeting; Dwight Thomas, DCPS Placement Specialist and Monitor; and Cheron Sutton-Brock, Educational Advocate.  HOD, R at 3-4.  The Hearing Officer admitted the Resolution Meeting Notes, which were submitted as part of DCPS' Amended Disclosure Statement, over the objection of Plaintiffs' counsel.  *Id.*  Specifically, the HOD stated:

> … the recently amended IDEA requires the local educational
> agency to convene a Resolution Meeting to encourage the parties
> to resolve the issues in dispute promptly and informally.  Since the
> hearing officer is the only person in a position to monitor the
> parties' compliance with this provision, this hearing officer ruled
> that the Resolution Meeting notes were part of the record that the
> hearing officer should review.

R. at 3.

The HOD also addressed Plaintiff's Motion to Dismiss the Complaint for a procedural violation—that DCPS did not sufficiently respond the Due Process Complaint.  HOD, R. at 4-5. The HOD concluded that, while DCPS did respond to the Due Process Complaint within ten days (R. at 166), that response was legally insufficient because it did not send the parent a prior

---

[5] All of the attorneys who represented Plaintiff at the administrative hearing level and in the present case are members of the James E. Brown & Associates, PLLC law firm.

notice concerning D.D.'s compensatory education.  HOD, R. at 4-5.  The HOD then went on to find that this procedural misstep caused no harm because two days later—and within the mandated fifteen days—DCPS convened a Resolution Meeting in which DCPS offered to reimburse Plaintiff for a private provider of compensatory education services.  *Id.* at 5.  The HOD found that offer to be "full satisfaction of the claim,"[6] and determined that "Petitioner's counsel is singularly responsible for any delay after July 27, 2005 in Petitioner receiving the compensatory education services prescribed in the Compensatory Education Plan."  *Id.*

The Hearing Officer found that "DCPS determined that it would reimburse Petitioner [for Seeds of Tomorrow,] a private provider of the compensatory education services, but the parties did not discuss this issue prior to the filing of the [Due Process Complaint]."  *Id.*  In Footnote 4, the Hearing Officer found that, based on the testimony of Ms. Sutton-Brock and Mr. Thomas, both "parties were mutually negligent in failing to ensure that another conversation took place to clarify whether Petitioner would attend a summer session to receive the services."  *Id.* at Footnote 4.  Ms. Sutton-Brock testified that she faxed a brochure about Seeds of Tomorrow to Mr. Thomas in June of 2005.  T. at 59-60.  She also indicated that she made calls to him.  T. at 60.  Mr. Thomas stated that he received the brochure and discussed the program with Shauntell Harley of DCPS Office of Special Education in the Office of Compliance and Dispute Resolution, who oversees compensatory education.  T. at 32.  According to Mr. Thomas, Ms.

---

[6] In addition to not addressing attorneys' fees, Plaintiff argues that the offer was not full satisfaction of the claim because transportation was not directly offered or discussed and because reimbursement would require the parent to pay the tuition upfront.  Plaintiff's Motion at 13.  Both of these allegations are discussions that would be addressed after a DCPS agreement to fund a private provider.  Transportation is a usual and necessary part of a private placement and would have been provided if the parent consented to the Seeds of Tomorrow placement.  At the hearing, after an inquiry about transportation by the Hearing Officer, Mr. Thomas indicated that DCPS would provide transportation to Seeds of Tomorrow if necessary.  T. at 48.  With regard to reimbursement, if D.D. had been placed at Seeds of Tomorrow, his mother would have been reimbursed for the cost, pursuant to the Superintendent's Directive.  HOD, R. at 4.  Payment to a private provider generally is guided by *Petties v. District of Columbia*, Civ. Action No. 95-0148 (D.D.C.) (Friedman, J.**),** which involves procedures for direct payments from DCPS to the private provider.

Harley said approval of the program was in Mr. Thomas' discretion.  *Id.*  Mr. Thomas then

determined that the program was appropriate, and that DCPS would reimburse D.D. for

compensatory education services at Seeds of Tomorrow.[7]  *Id.*

Ultimately, on October 6, 2005, the Hearing Officer dismissed the administrative

complaint with prejudice.  R. at 5.  He did so on a procedural basis, rather than a review of the

substantive issues.  R. at 1-8.  He held that because the parent was offered full satisfaction of her

claim at the Resolution Meeting, proceeding to a due process hearing solely for the purpose of

attorneys' fees was improper.  R. at 5.  Specifically, the Hearing Officer found:

> A Resolution Session Meeting was convened on July 27, 2005.
> DCPS offered to reimburse Petitioner's parent up to $2,100.00 for
> Seeds of Tomorrow to provide specialized instruction and related
> services prescribed in the Compensatory Education Plan.
> Petitioner's representatives declined the offer of settlement
> because it did not include an award of attorneys' fees. [Footnote 5
> cites the testimony of Mr. Thomas, Ms. Rodi, Ms. Sutton-Brock,
> and Mr. Lammers].

R. at 4.  He then concluded that:

> As this hearing officer stated on the record at the hearing, it was
> both irresponsible and unethical for Petitioner's counsel to advise
> the client to reject a settlement offer that promised full satisfaction
> of the claim, only because DCPS would not agree to pay attorneys'
> fees … Petitioner's counsel is singularly responsible for any delay
> after July 27, 2005 in Petitioner receiving the compensatory
> education services prescribed in the Compensatory Education Plan.

R. at 5.  He then dismissed the case with prejudice.  R. at 5.

To reiterate, the Compensatory Education Plan required DCPS to either begin services

with a private provider in July of 2005, or in September of 2005.  R. at 4.  Because DCPS offered

---

[7] Mr. Thomas testified that he was unsure about when he received the brochure and made his decision, but he
thought it was around June 10, 2005.  T. at 34.

to reimburse for the private provider's services immediately, it would have met the July of 2005 deadline (and the September of 2005, deadline if the private provider did not work out).[8]  R. at 5.

On November 4, 2005, Plaintiff filed the present case to appeal the HOD, and on April 10, 2006, Plaintiff filed her Motion for Summary Judgment ("Plaintiff's Motion").

## STANDARD OF REVIEW

### I.    Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  *See id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court

---

[8] At the hearing, the Hearing Officer stated:

> And as to the substance of the Complaint, it appears to me from the testimony today uncontroverted that DCPS, No. 1) provided for comp-ed on May 27 in a Comp-ed Plan.  The only issue was when it was going to be provided and where it was going to be provided.  And that, at the very latest it was going to be provided in the next school year, and perhaps, at Seeds and that was offered July 27.  And the only reason it wasn't accepted from the testimony I heard today was attorneys' fees.  So, certainly, there's no violation of the law.

T. at 81.

determines appropriate." 20 U.S.C. §1415(i)(2)(B). When neither party has requested the court

to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle

for asking the judge to decide the case on the basis of the administrative record." *Heather S. v.*

*Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Factual determinations of the hearing officer are

to be accorded due weight.

## II.    Review of administrative decisions under IDEA.

IDEA provides for judicial review in state or federal court for "[a]ny party aggrieved by

the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(i)(2)(A). In

conducting such review, the "preponderance of the evidence" standard of 20 U.S.C.

§1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of

sound educational policy for those of the school authorities which they review." *Board of*

*Educ.of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). Stated

differently, the court should not "reverse the hearing officer's findings simply because [the court]

disagree[s] with them." *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State*

*Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading

the court that the hearing officer was incorrect. *Angevine v. Smith*, 292 U.S. App. D.C. 346, 959

F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988);

*Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an

independent determination, "it must also give 'due weight' to the administrative proceeding and

afford some deference to the expertise of the hearing officer and school officials responsible for

the child's education." *Lyons*, 829 F. Supp. at 418. This deference results from Congress'

recognition of the "specialized knowledge and experience" required to make complicated

9

educational choices.  *Rowley*, 458 U.S. at 207-08.  Accordingly, this Court must give the hearing

officer's determination "due weight," and Plaintiff, in order to prevail, must show by a

"preponderance of the evidence" that the hearing officer was wrong.

Because the HOD was appropriate in all respects challenged by Plaintiff, Plaintiff cannot

make the required showing, and summary judgment should be granted to Defendants.

## ARGUMENT

From the outset, it is important to note that Plaintiff no longer claims denial of a FAPE

based on a missing transcript from the administrative hearing.  Complaint, Count III at 15-16.  In

fact, Defendants were able to provide Plaintiff with the transcript.  R. at 182 (T. at 1-82).

Further, Plaintiff alleges no facts or legal arguments to support either a claim under 42

U.S.C. §1983 or Section 504 of the Rehabilitation Act.  *See* Plaintiff's Complaint; *see also*

Plaintiff's Motion.

Significantly, Plaintiff does not dispute, and given the record evidence cannot dispute,

that her counsel advised her not to resolve the matter primarily (if not solely) for the purpose of

obtaining attorneys' fees.  Plaintiff's Motion.  While Plaintiff attempts to confuse the issue by

characterizing the Resolution Meeting as "settlement negotiations" and claiming that not

discussing fees at the meeting was tantamount to denying Plaintiff the right to counsel, Plaintiff

essentially is asking this Court to overturn the HOD, and to ignore the Congressional exclusion

of fees for resolution meetings, so that she can obtain attorneys' fees.  *See* Plaintiff's Motion at 9,

14.

Prior to the filing of the Due Process Complaint on July 12, 2005, the parties already

agreed to the amount and type of compensatory education services for D.D.  HOD, R. at 4.  The

only issue was whether a private provider—Seeds of Tomorrow—would provide the services in

July or whether DCPS would provide services in September of 2005. *Id.* at 4-5.

**I.      The HOD should be upheld because it is consistent**
**with both the law and the spirit of the IDEA.**

The Hearing Officer was within his authority when he dismissed the case, finding that

Plaintiff's counsel inappropriately hindered the resolution of the case for the sole purpose of

obtaining attorneys' fees. *See* HOD, R. at 5. In reviewing the Resolution Meeting Notes and

other document evidence such as the Compensatory Education Plan, as well as hearing testimony

from five witnesses, the Hearing Officer determined that Plaintiff's counsel frustrated the

resolution of the issues raised in Plaintiff's Due Process Complaint, and was the cause for D.D.

not obtaining the services he needed. HOD, R. at 5. In putting attorneys' fees above D.D.'s need

for services, Plaintiff's counsel violated the law and the spirit of the IDEA.

**A.      Plaintiff's counsel frustrated the goals of the IDEA when he did not allow**
**the parent and DCPS to resolve the matter in a non-adversarial manner.**

The purpose of the IDEA is to provide a free appropriate public education to children

with disabilities. 20 U.S.C. §§ 1400 *et seq.* Unfortunately, adversarial procedures began to

frustrate joint efforts between the parents and the school system to resolve problems regarding

students and their access to a FAPE. In § 1400(c)(8), Congress found that "[p]arents and schools

should be given expanded opportunities to resolve their disagreements in positive and

constructive ways." Congress also found that parent training and information activities:

> … [play] a vital role in creating and preserving constructive
> relationships between parents of children with disabilities and
> schools by facilitating open communication between the parents
> and schools; encouraging dispute resolution at the earliest possible
> point in time; and discouraging the escalation of an adversarial
> process between the parents and schools.

20 U.S.C. § 1450(11)(A). Clearly, Congress hoped to foster a non-adversarial relationship

between parents and schools.

In 2004, Congress added to the hearing procedures, among other changes, a requirement

that the parties convene a resolution meeting before a due process hearing convenes. As

provided by 20 U.S.C. §1415(f)(1)(B):

> (i) Preliminary meeting. Prior to the opportunity for an impartial due
> process hearing under subparagraph (A), the local educational agency
> shall convene a meeting with the parents and the relevant member or
> members of the IEP Team who have specific knowledge of the facts
> identified in the complaint—
> (I) within 15 days of receiving notice of the parents' complaint;
> (II) which shall include a representative of the agency who has
> decisionmaking authority on behalf of such agency;
> (III) which may not include an attorney of the local educational agency
> unless the parent is accompanied by an attorney; and
> (IV) where the parents of the child discuss their complaint, and the facts
> that form the basis of the complaint, and the local educational agency is
> provided the opportunity to resolve the complaint, unless the parents
> and the local educational agency agree in writing to waive such
> meeting, or agree to use the mediation process described in subsection
> (e) of this section.

The purpose of the pre-hearing resolution process is to encourage the amicable resolution of

parents' concerns and to avoid needless litigation.

To further alleviate potentially unnecessary contention, the statute does not permit the

recovery of attorneys' fees for attendance at resolution meetings (20 U.S.C. §1415(i)(3)(D)(iii)),

and does not permit the attendance of a DCPS attorney unless the student's parent are

accompanied by an attorney. 20 U.S.C. §1415(f)(1)(B)(i)(III).

The Supreme Court also has acknowledged Congress' move away from adversarial

procedures in *Schaffer v. Weast,* 126 S. Ct. 528 (2005), 535 -536 (U.S. 2005):

> Litigating a due process complaint is an expensive affair, costing
> schools approximately $8,000-to-$12,000 per hearing. See
> Department of Education, J. Chambers, J. Harr, & A. Dhanani,

12

> *What Are We Spending on Procedural Safeguards in Special Education* 1999-2000, p. 8 (May 2003) (prepared under contract by American Institute for Research, Special Education Expenditure Project). Congress has also repeatedly amended the Act in order to reduce its administrative and litigation-related costs. For example, in 1997 Congress mandated that States offer mediation for IDEA disputes. Individuals with Disabilities Education Act Amendments of 1997, Pub.L. 105-17, § 615(e), 111 Stat. 90, 20 U.S.C. § 1415(e). In 2004, Congress added a mandatory "resolution session" prior to any due process hearing. Individuals with Disabilities Education Improvement Act of 2004, Pub.L. 108-446, § 615(7)(f)(1)(B), 118 Stat. 2720, 20 U.S.C.A. § 1415(f)(1)(B) (Supp.2005). It also made new findings that "[p]arents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways," and that "[t]eachers, schools, local educational agencies, and States should be relieved of irrelevant and unnecessary paperwork burdens that do not lead to improved educational outcomes." §§ 1400(c)(8)-(9).

In this jurisdiction, in *Lesesne v. District of Columbia*, Civ. Action No. 04-0620 (D.D.C. July 25, 2005) (Kollar-Kotelly, J.),[9] the Court admonished Plaintiff's counsel for being more concerned with the adversarial process and attorneys' fees than with the student's "best interest"—ensuring that the student received a FAPE.[10]  See page 6 of the Court's *Lesesne Decision,* attached hereto as Defendants' Exhibit 1.

In the present case, Plaintiff's counsel, like the plaintiff's counsel in *Lesesne,* did not have the best interest of his client in mind when he encouraged her to push the issue of attorneys' fees.  Because of this unwillingness cooperate with DCPS, D.D. was not able to participate in the

---

[9] This case was affirmed on the merits in *Lesesne v. District of Columbia,* Civ. Action No. 05-7123 (D.C. Cir. May 19, 2006).

[10] The Court states:

> … the Court cannot condone (1) the uncooperative behavior by both B.F. and Plaintiff, which derailed the IEP process, and (2) Plaintiff's decision to postpone the DCPS' efforts at meeting simply to achieve a final judicial judgment for the purpose of attorney's fees, as the administrative hearing transcript suggests.  The best interest of the client, B.F., would have been to accept the school's invitation and begin the process of creating an IEP, as opposed to waiting for the H.O. to order such a meeting.

> *Lesesne* Decision, at 6 (internal citations to the record omitted).

summer program at Seeds of Tomorrow.  HOD, R. at 5.  Furthermore, had Plaintiff agreed to the resolution offered at the meeting, DCPS could have timely implemented the Compensatory Education Plan.  Plan, R. at 30.

### B.    DCPS did not violate the Compensatory Education Plan.

Even read in the light most favorable to Plaintiff, DCPS did not violate the Plan developed at the May 27, 2005, IEP meeting.  IEP Meeting Notes, R. at 32.  The Plan, which was signed by all of the team members including the student's mother, required DCPS to provide D.D. with 60 hours of specialized instruction in the form of tutoring, as well as five hours of counseling and five hours of speech and language therapy.  R. at 30.  According to the Plan, compensatory education services were to begin in September of 2005, with the possibility of starting in July of 2005, with a private provider, subject to DCPS approval.  Plan, R. at 30; IEP Meeting Notes, R. at 34.

While Plaintiff filed her Due Process Complaint on July 12, 2005, alleging that DCPS denied D.D. a FAPE when DCPS did not begin compensatory education services in July of 2005 with Seeds of Tomorrow (Due Process Complaint, R. at 176), DCPS had 19 more days in the month of July to approve funding of Seeds of Tomorrow so that D.D. could begin attending.  If that did not work out, DCPS could begin providing compensatory education services itself in September of 2005.  Thus, in filing her Due Process Complaint on July 12, Plaintiff prematurely began the adversarial process.  Further, because the Resolution Meeting convened on July 27, and DCPS approved and offered to fund Seeds of Tomorrow immediately, Plaintiff could have received exactly what she wanted from DCPS, again before the end-of-July deadline in the Plan.

**II.    A resolution meeting held pursuant to the IDEA is not a "settlement negotiation." Further, the notes produced from such a meeting are not confidential.**

Plaintiff incorrectly states that "it is uncontroverted that the discussions between the parties at the July 27, 2005, resolution meeting were in the context of settlement discussions…" Plaintiff's Motion at 9-10.  This statement ignores not only the IDEA itself, but also DCPS' position at the meeting.

**A.    The IDEA does not require resolution meeting notes to be confidential.**

Section 1415(f)(1)(B) of the IDEA lays out in detail the procedures for convening a resolution meeting.  See above section at 2-3.  No where does it state that such notes should be confidential.  By contrast, § 1415(e)(2), the section which gives the procedures for mediation, specifically states that "[d]iscussions that occur during the *mediation* process shall be confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding."  § 1415(e)(2)(G) (emphasis added).  Clearly, Congress knew how to make a procedure confidential when it deemed it necessary, and Congress chose not to make the resolution meeting discussions confidential.

This reading is consistent with the purpose of the resolution meeting—to encourage the school and the parent to work together to resolve the issue in a non-adversarial forum.

**B.    DCPS never characterized the meeting as a settlement negotiation.**

DCPS did not view the meeting as a "settlement negotiation" in the sense suggested by Plaintiff.  The Resolution Meeting Notes indicate that at the beginning of the meeting, the parent asked if the meeting was to be confidential.  R. at 19.  The notes state that "[t]he LEA cannot agree to that given this is to be a conversation; we are not at trial or mediation."  *Id.*  Ms. Rodi and Mr. Thomas testified that Mr. Thomas, Ms. DeZiel, and Ms. Rodi were all in agreement that attorneys' fees were not properly part of the Resolution Meeting discussions and repeatedly

15

conveyed that to the parent and her counsel.  T. at 65.  The Meeting Notes comport with this.  R. at 19.  All of this demonstrates that DCPS did not treat the meeting as a settlement.

> **C.      Even assuming *arguendo* that the Resolution Meeting was a "settlement negotiation," the Hearing Officer still could <u>properly consider what transpired under Fed. R. Evid. 408.</u>**

Even accepting the Plaintiff's characterization of the Resolution Meeting as a "settlement negotiation," Fed. R. Evid. 408 is not applicable.  The rule states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Clearly, Rule 408 is meant to protect a party from participating in settlement negotiations openly and having statements used against that party for liability issues.

In the instant case, liability at the time of the meeting was not at issue.  Both parties agreed that the Compensatory Education Plan required DCPS to provide services to D.D. either by a private provider in July of 2005, or by DCPS in September of 2005.  DCPS offered D.D. funding for Seeds of Tomorrow at the Resolution Meeting on July 27, 2005, and had approved that provider prior to the meeting.  Thus, the Meeting Notes were not offered to demonstrate the liability of the defending party, as contemplated by the Rule.  Rather, the Notes were offered to

demonstrate DCPS' offer to resolve the complaint in full satisfaction of the claim.  Again, liability was not the purpose for the disclosure of the Notes.[11]

The Hearing Officer explains that he used the Notes to make sure the Resolution Meeting convened and proceeded as required by the IDEA.  HOD, R. at 3.  Although not explicitly stated by the Hearing Officer, he also used the Notes to determine whether Plaintiff's counsel caused "undue delay," an example for disclosing settlement negotiations given in the Rule itself.  Thus, even if this Court were to find that the Resolution Meeting Notes were "settlement discussions" in the usual judicial proceeding-related sense, the Hearing Officer could properly consider them as part of the record.

## CONCLUSION

As Defendants have demonstrated, the HOD was proper and should be upheld by this Court.  It was consistent with the IDEA in law and in spirit.  Accordingly, Plaintiff's motion for summary judgment should be denied, and Defendants' present motion should be granted.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE  C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief,  Equity Section 2

---

[11] Even if liability was a consideration here, it was *DCPS* that might have been considered the party that the disclosure would offend—that is DCPS' "liability" for compensatory education services.  Yet, it was *DCPS* that offered information about the resolution session, thus, waiving any available objection of a Rule 408 sort.

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTINE DAVIS, | ) |
| Parent and next friend of D.D., a minor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 05-2176 (PLF/DAR) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.,* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE ISSUE AND RESPONSE
TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1, Defendants submit this statement of material facts as to which there is no genuine issue:[1]

1. D.D. is a minor living in the District of Columbia who has been found eligible for special education services.  HOD, R. at 4.

2. D.D. currently attends M.M. Washington Career Senior High School, a school within the DCPS system.  R. at 53.

3. On May 27, 2005, an IEP team convened to discuss compensatory education, pursuant to settlement agreements between D.D. and DCPS.  IEP Meeting Notes, R. at 32.

---

[1] In response to Plaintiff's Statement of Material Facts, Defendants note that the parties agree that this case may be disposed of by cross motions for summary judgment at this time. Thus, while Defendants do not claim that the facts contained in Plaintiff's Statement create a genuine issue requiring trial, the facts set forth herein directly conflict with Plaintiff's facts in that they require a grant of summary judgment for Defendants.  However, Defendants question the materiality of Plaintiff's "fact" statements; indeed, two of Plaintiff's statements are conclusions of law and of Plaintiff, and not ones of fact (e.g., Plaintiff's Statement at ¶ 17 and ¶ 18). The Court should assess the weight ascribed to these fact statements and their materiality to the issues presented in this case accordingly.

4.  At the meeting, the team determined that D.D. was entitled to 60 hours of specialized instruction in the form of tutoring, as well as five hours of counseling and five hours of speech and language therapy.  Compensatory Education Plan ("Plan"), R. at 30.

5.  The Compensatory Education Plan developed at the meeting was signed by the team members, including the parent and her advocate.  *Id.*

6.  According to the Plan, compensatory education services were to begin in September of 2005, with the option of starting in July of 2005, with a private provider, subject to DCPS approval.  Plan, R. at 30; IEP Meeting Notes, R. at 34.

7.  On July 12, 2005, Plaintiff filed its Due Process Complaint, alleging that DCPS denied D.D. a FAPE when DCPS did not begin compensatory education services in July of 2005 with the parent-selected, private provider, Seeds of Tomorrow.  Due Process Complaint, R. at 176.

8.  DCPS filed its Response to Plaintiff's Due Process Complaint on July 25, 2005 (R. at 166), and on July 27, 2005, a Resolution Meeting convened.  Resolution Meeting Notes, R. at 19.

9.  At the meeting, the designated local education agency representative ("LEA") for DCPS, Resolution Specialist Elizabeth DeZiel, offered to immediately fund D.D. at Seeds of Tomorrow in satisfaction of D.D.'s claim.  *Id.*

10. According to the Resolution Meeting Notes, the parent stated that she was receptive to what the LEA offered with respect to educational matters, but was concerned about attorneys' fees (which her attorney discussed with the parent several times during the meeting).  R. at 19-20.

11. The Notes also indicate that the parent's attorney at the meeting—Marshall Lammers—was whispering in the parent's ear constantly and "seemed to be delaying the process." R. at 19-20.

12. This is consistent with the September 14, 2005, testimony of both DCPS Attorney Advisor Katherine Rodi and DCPS Special Education Placement Specialist and Monitor Dwight Thomas, who also attended the Resolution Meeting.  T. at 14-15, 36, 38, 63-65.

13. Further, Mr. Lammers testified at the September 14, 2005, hearing that he discussed with and advised the parent about attorneys' fees, in addition to other issues, at the meeting before she raised it during the meeting.  T. at 76-77.

14. Ms. Rodi, who attended the meeting as DCPS' counsel, testified that the parent stated that she would not accept the DCPS offer because attorneys' fees were not included in the offer.  T. at 64.

15. Ms. Rodi and Mr. Thomas testified that Mr. Thomas, Ms. DeZiel, and Ms. Rodi were all in agreement that attorneys' fees were not properly part of the Resolution Meeting discussions and repeatedly conveyed that to the parent and her counsel.  T. at 65.

16. The Meeting Notes comport with this.  R. at 19.

17. The Resolution Meeting Notes indicate that at the beginning of the meeting, the parent asked if the meeting was to be confidential.  R. at 19.

18. The notes state that "[t]he LEA cannot agree to that given this is to be a conversation; we are not at trial or mediation."  *Id.*

19. Also, according to the Resolution Meeting Notes, the meeting ended without resolution at the parent's request.  R. at 20.

20. On July 29, 2005, Plaintiff notified the Student Hearing Office that no resolution was reached between the parent and DCPS, and requested a due process hearing.  R. at 155.

21. On September 14, 2005, a hearing convened.  HOD, R. at 1.

22. The Hearing Officer accepted into the record the parties' Five Day Disclosure Notices with attached exhibits, including DCPS' Amended Disclosure Statement, which was timely submitted (R. at 11-47, 50-147) and heard the testimony of five witnesses: Christine Davis, D.D.'s mother; Marshall Lammers, counsel for the parent at the Resolution Meeting; Katherine Rodi, DCPS attorney advisor at the Resolution Meeting; Dwight Thomas, DCPS Placement Specialist and Monitor; and Cheron Sutton-Brock, Educational Advocate.  HOD, R at 3-4.

23. The Hearing Officer admitted the Resolution Meeting Notes, which were submitted as part of DCPS' Amended Disclosure Statement, over the objection of Plaintiffs' counsel. *Id.*

24. Specifically, the HOD stated:

> … the recently amended IDEA requires the local educational agency to convene a Resolution Meeting to encourage the parties to resolve the issues in dispute promptly and informally.  Since the hearing officer is the only person in a position to monitor the parties' compliance with this provision, this hearing officer ruled that the Resolution Meeting notes were part of the record that the hearing officer should review.

R. at 3.

25. The HOD also addressed Plaintiff's Motion to Dismiss the Complaint for a procedural violation—that DCPS did not sufficiently respond the Due Process Complaint.  HOD, R. at 4-5.

26. The HOD concluded that, while DCPS did respond to the Due Process Complaint within ten days (R. at 166), that response was legally insufficient because it did not send the parent a prior notice concerning D.D.'s compensatory education.  HOD, R. at 4-5.

27. The HOD then went on to find that this procedural misstep caused no harm because two days later—and within the mandated fifteen days—DCPS convened a Resolution Meeting in which DCPS offered to reimburse Plaintiff for a private provider of compensatory education services.  *Id.* at 5.

28. The HOD found that offer to be "full satisfaction of the claim," and determined that "Petitioner's counsel is singularly responsible for any delay after July 27, 2005, in Petitioner receiving the compensatory education services prescribed in the Compensatory Education Plan."  *Id.*

29. The Hearing Officer found that "DCPS determined that it would reimburse Petitioner [for Seeds of Tomorrow,] a private provider of the compensatory education services, but the parties did not discuss this issue prior to the filing of the [Due Process Complaint]."  *Id.*

30. In Footnote 4, the Hearing Officer found that, based on the testimony of Ms. Sutton-Brock and Mr. Thomas, both "parties were mutually negligent in failing to ensure that another conversation took place to clarify whether Petitioner would attend a summer session to receive the services."  *Id.* at Footnote 4.

31. Ms. Sutton-Brock testified that she faxed a brochure about Seeds of Tomorrow to Mr. Thomas in June of 2005.  T. at 59-60.

32. She also indicated that she made calls to him.  T. at 60.

33. Mr. Thomas stated that he received the brochure and discussed the program with Shauntell Harley of DCPS Office of Special Education in the Office of Compliance and Dispute Resolution, who oversees compensatory education.  T. at 32.

34. According to Mr. Thomas, Ms. Harley said approval of the program was in Mr. Thomas' discretion.  *Id.*

35. Mr. Thomas then determined that the program was appropriate, and that DCPS would reimburse D.D. for compensatory education services at Seeds of Tomorrow.  *Id.*

36. Ultimately, on October 6, 2005, the Hearing Officer dismissed the administrative complaint with prejudice.  R. at 5.

37. He did so on a procedural basis, rather than a review of the substantive issues.  R. at 1-8.

38. He held that because the parent was offered full satisfaction of her claim at the Resolution Meeting, proceeding to a due process hearing solely for the purpose of attorneys' fees was improper.  R. at 5.

39. Specifically, the Hearing Officer found:

> A Resolution Session Meeting was convened on July 27, 2005.
> DCPS offered to reimburse Petitioner's parent up to $2,100.00 for
> Seeds of Tomorrow to provide specialized instruction and related
> services prescribed in the Compensatory Education Plan.
> Petitioner's representatives declined the offer of settlement
> because it did not include an award of attorneys' fees. [Footnote 5
> cites the testimony of Mr. Thomas, Ms. Rodi, Ms. Sutton-Brock,
> and Mr. Lammers].

R. at 4.

40. He then concluded that:

> As this hearing officer stated on the record at the hearing, it was both irresponsible and unethical for Petitioner's counsel to advise the client to reject a settlement offer that promised full satisfaction of the claim, only because DCPS would not agree to pay attorneys' fees … Petitioner's counsel is singularly responsible for any delay after July 27, 2005 in Petitioner receiving the compensatory education services prescribed in the Compensatory Education Plan.

R. at 5.

41. He then dismissed the case with prejudice.  R. at 5.

42. To reiterate, the Compensatory Education Plan required DCPS to either begin services with a private provider in July of 2005, or in September of 2005.  R. at 4.

43. Because DCPS offered to reimburse for the private provider's services immediately, it would have met the July of 2005 deadline (and the September of 2005, deadline if the private provider did not work out).  R. at 5.

44. At the hearing, the Hearing Officer stated:

> And as to the substance of the Complaint, it appears to me from the testimony today uncontroverted that DCPS, No. 1) provided for comp-ed on May 27 in a Comp-ed Plan.  The only issue was when it was going to be provided and where it was going to be provided.  And that, at the very latest it was going to be provided in the next school year, and perhaps, at Seeds and that was offered July 27.  And the only reason it wasn't accepted from the testimony I heard today was attorneys' fees.  So, certainly, there's no violation of the law.

T. at 81.

45. On November 4, 2005, Plaintiff filed the present case to appeal the HOD, and on April 10, 2006, Plaintiff filed her Motion for Summary Judgment.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
Eden.Miller@dc.gov

8