UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CHRISTINE DAVIS,** | : | |
| **Parent and next friend of D.D., a minor** | : | |
| | : | |
| Plaintiff | : | Civil Action No. 05-2176(PLF/DAR) |
| | : | |
| v. | : | |
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| | : | |
| Defendant | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND HER OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, the Plaintiff, by and through her counsel, Tilman L. Gerald, Esquire and James E. Brown and Associates P.L.L.C. and her Memorandum of Points and Authorities submitted in support of her reply the Defendant's Opposition to Plaintiff's Motion for Summary Judgment and her opposition to the Defendant's Motion for Summary Judgment respectfully represents unto this Honorable Court as follows:

**I. PROCEDURAL & SUBSTANTIVE BACKGROUND**

In the November 4, 2005 Complaint Plaintiffs are seeking reversal of the October 6th, 2005 Hearing Officer's Decision (hereinafter "HOD") that dismissed D.D.'s claims with prejudice. The Complaint seeks a finding by this Court that determines that the Hearing Officer abused his discretion when he held that a parent is obligated to accept a proposal for settlement and further erred as a matter of law when he allowed into evidence settlement discussions. *See Plaintiff's Complaint ¶ 13.*

The Plaintiff filed her motion for summary judgement and memorandum in support thereof on April 10th, 2006 with the Defendant responding on June 13th, 2006. The Defendant contends that October 2006 Hearing Officer's Determination should be affirmed because Plaintiff's counsel frustrated the non-adversarial process and caused undue delay when the parent requested reimbursement of reasonable attorney fees. This contention is false and only serves to obfuscate the real issues in this case. The two issues present before this honorable court are whether the hearing officer erred when he admitted resolution session meeting notes into evidence and thereafter utilized said notes to support his decision to dismiss her claim ( thereby denying the Plaintiff a due process hearing on the merits) and whether the Plaintiff was obligated to accept the offer proposed to her by the Defendant at a Resolution Meeting.

As previously noted the educational advocate requested, at a May 27, 2005 MDT meeting, that the Defendant fund D.D.'s compensatory special education services at Seeds of Tomorrow. *Compl.¶ 36; AR. at 32*. Dwight Thomas, special education coordinator and local educational agency representative(LEA), requested that the advocate provide him with information on the program and that he would approve it. *Compl.¶ 38; AR. at 32;* 212, 237. The advocate provided the information to Mr. Thomas approximately two weeks after the meeting. *Id*. Due to Mr. Thomas' failure to provide Plaintiff with his approval in a timely fashion, Plaintiff's counsel filed a due process hearing complaint on July 12, 2005 wherein the Plaintiff sought funding for D.D.'s placement and transportation for Seeds of Tomorrow, a finding that D.D. was denied access to a free and appropriate education, with copies of all notices to Plaintiff's counsel. The Plaintiff also requested reasonable attorneys fees. *Compl.¶ 41*. At the July 27, 2005 resolution session meeting, the parent and her counsel requested that discussions occurring during the meeting remain

confidential and that the information discussed in meeting not be used in subsequent hearings. *Compl.¶ 46.* The Defendant refused to accede to the request and began to take notes. *R.at 18.* The parties did not achieve resolution and the matter proceeded to a hearing. *Compl.¶ 47.*

In the October 6, 2005 HOD, the hearing officer, noted Plaintiff's objection to the admission of the Resolution Session Meetings Notes. *Compl.¶ 61, 62; AR at 5; 261-264.* He determined that Plaintiff frustrated the process by not accepting the settlement proposal made by DCPS, even though he was aware that the proposal failed to address the relief sought in the Plaintiff's complaint. *Compl.¶ 61; Id.*

## II. THE DEFENDANT HAS NOT ADVANCED AN ARGUMENT THAT WILL SURVIVE A MOTION FOR SUMMARY JUDGMENT

The Defendant has not asserted any facts that would support its motion for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when the pleadings and the evidence demonstrate that "...there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists..." The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The party seeking summary judgment may successfully support its motion by informing the district court of the basis of its motion and identifying those portions of the record including the pleadings, depositions, answers to interrogatories, as well as admissions on file together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c).

There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50. "Summary judgment is appropriate if the non-movant fails to offer evidence on which the jury could find for the [non-movant]." See *Holbrook v. Reno,* 196 F.3d 255, 259-60(D.C. Cir. 1999); see also *Anderson, supra.,* at 249-50.

Once a proper summary judgment motion is filed, the burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED.R.CIV. P. 56(e); *Anderson*, 477 U.S. at 250. The non-moving party, to establish that a genuine issue for trial exists, must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586. Apparently, the Defendant concedes the Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute as it failed to respond thereto. The Defendant has failed to evince sufficient factual basis to support its Motion for Summary Judgment and having failed to carry its burden its Motion must consequently be denied. Plaintiff will address in seriatim the arguments made in the Defendant's Motion and Opposition.

### III. ARGUMENT

### A. THE HEARING OFFICER'S DETERMINATION SHOULD BE REVERSED AS HE EXCEEDED THE SCOPE OF HIS AUTHORITY

The Plaintiff in this matter bears the burden of demonstrating that by a preponderance of the evidence the hearing officer's determination was incorrect. *See Angevine v. Smith*, 292 U.S. App. D.C., 346, 292 F. 2d 292, at 295 (1992). In reviewing the challenged hearing decision, the court is required to give deference to the findings of fact of the Hearing Officer in administrative cases unless it can point to extrinsic evidence of a non-testimonial nature in the record. *See S.H. v. State Operated School Dist. of the City of Newark*, 336 F.3d 260 (2003). In this matter the hearing officer erred as a matter of law when he stated that he was the only person in a position to monitor whether a meeting occurred and thereafter admitted the Resolution Meeting Notes into evidence. *AR. at 5.* 20 U.S.C. 1415 (f)(B)(IV) provides that a resolution meeting must occur unless it is waived in writing by the parties, on the other hand, if a resolution meeting occurs and parties reached an agreement, then that agreement must be memorialized.

Additionally, if the parties fail to reach an agreement, the matter must proceed to a due process hearing before an impartial due process hearing officer. Therefore, if the matter is scheduled for hearing after the timing sequence set forth in the statute the Hearing Officer may presumptively conclude that the parties have satisfied the resolution meeting requirement under the statute rather than requesting to review resolution meeting notes. The foregoing assures that the integrity of the procedural safeguards as set forth in statute itself to protect the rights of parents and special education.

According to IDEIA, Hearing Officer's Determinations are to be based on substantive grounds relating to issues regarding whether a child received FAPE and/or "procedurals inadequacies" related

to FAPE. See 34 CFR 300.513. The reason proffered by the hearing officer to review the resolution meeting notes was a sham and was totally void of legal merit, constituting grievous and reversible error. No where in the IDEIA is there any statutory authority or basis requiring or even allowing hearing officers to review notes from a Resolution Session Meeting for any purpose let alone the reason offered by the hearing officer in this case.

### 1. THE DISCUSSIONS DERIVED FROM STATUTORILY MANDATED RESOLUTION SESSION MEETINGS MUST BE PROTECTED UNDER FEDERAL RULE 408

The issue of whether discussions between the parties that occur during a from resolution session meetings should be admitted into evidence is clearly a matter of first impression. The Defendant asserts that the Resolution Session meetings should not be characterized as confidential and opined that discussions at said meetings are admissible into evidence. *Defendant's Motion for Summary Judgment at 15-16.* While the Defendant offers no case law to support such a contention, this contention runs contrary to the statutory language of the IDEIA and congressional intent for which is was drafted. Congress envisioned that at said meetings the parent and the LEA would openly discuss those issues presented in the due process complaint in an effort to resolve matters prior to a hearing. See 20 U.S.C 1415 (f). Congress further understood that if the meeting ended in a resolution, the agreed upon terms must be incorporated in written agreement enforceable in either state or federal court. *Id.*

Both parties agree that Rule 408 of the Federal Rules of Evidence governs the admissibility of settlement discussions into evidence. *See F.R.E. 408 (2006).* As noted in the Plaintiff's Motion for Summary Judgment, Rule 408 provides "...Evidence of (1)furnishing or offering or promising to furnish, or (2) accepting or promising to accept, a valuable consideration in compromising or

attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or the invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible..." *Id.* Thus, the resolution session meeting notes in the case *sub judice* were by the Defendants' own admission not offered by show bias or prejudice of a witness, not to negative a contention of undue delay nor for any other reason that would warrant their admission under Rule 408. The attempt by the Defendant to utilize the resolution meeting notes to demonstrate the invalidity of Plaintiff's claim for special education services for D.D. is of no moment. The Defendant's contention that Plaintiff's claim lacked legal merit post resolution session meeting was inadmissible and contrary to established and sound evidence law. The Defendant's assertion that liability is not an issue is nonsensical and its argument is incoherent. For instance, the Plaintiff has never attempted to use the offer that was tendered by the Defendant at the resolution meeting to prove liability, although it was uncontroverted that the Defendant owed D.D. a total of seventy hours (70) of specialized instruction and related services. It is the Defendant, aided and abetted by the Hearing Officer, that sought to introduce into evidence meeting notes to depict that the Plaintiff was somehow solely responsible for the outcome of the failed resolution meeting. That, however, is a untenable argument that can find no traction and necessarily must fail.

     The Defendant asserts that the purpose of Rule 408 is to allow a party to participate in settlement negotiations in an open manner without the fear that statements they make during those meetings will be used against them at a later time. The Defendant further asserts that Rule 408 is inapplicable in the matter presently before the Court because Rule 408 is limited to issues regarding

liability.  While the Defendant is correct in asserting the purpose of Rule 408, the Defendant is incorrect in asserting its limited use.

In this case, the parent made statements at the July 2005 Resolution Session Meeting that were subsequently used against her in the October 2005 hearing.  At that hearing, the Defendant asserted that it had offered to settle the parent's claim to her satisfaction and that the parent refused because of attorney fees.  Despite the Plaintiff's objection, the hearing officer's admission of the Resolution Meeting Notes into evidence allowed the Defendant to set forth an argument to invalidate the Plaintiff's claim.  More poignantly, the Plaintiff was placed in a uncompromising position because the Defendant drafted the very document that it sought to and did use against the Plaintiff.  This was is in clear violation of settled law which prohibits the admission of settlement discussions, which in reality is what a resolution meeting is by definition.

While the Defendant claims that it never characterized the Resolution Session Meeting as settlement negotiations, one can reasonable conclude that a party will not fully participate in such a meeting if there is even a remote possibility that any statements made at such a meeting could be used against that party in a subsequent proceeding.  One can further and reasonably conclude that if discussions at failed resolution meetings can be admitted into evidence at subsequent due process hearings, the special education litigation process would become more onerous and chaotic as the parents would have little if any incentive to participate in a process that purportedly was designed to reduce the stress, rigors and costs of litigating special education cases.  A parent's pursuit of special education services and benefits for their children will be severely crippled and thwarted if they faced the spectre of having their case dismissed because they rejected an offer of settlement at resolution meeting.

Quite clearly, when a Hearing Officer concludes that Resolution Meeting Notes are admissible under a contrived premise that he is the "resolution meeting monitor", the notion of due process and fundamental fairness can not and indeed should not become expendable. Thus, upon receipt of a due process hearing complaint, the local education agency must provide the parent with a impartial due process hearing. If the local educational agency fails to resolve the ***complaint to the satisfaction of the parent,*** either through mediation or resolution meeting, hearing may be held. See 20 U.S.C. 1415 (f)(1)(A) & 20 U.S.C. 1415(f)(1)(B)(ii). Consequently, the admission of such discussions into due process proceedings would impede on the parent's due process rights since the law bars the parent from raising issues not presented in the complaint. 20 U.S.C. 1415(f)(3)(B).

The Defendant's assertions regarding the parent requests of reasonable attorneys fees is a red herring utilized to divert attention from its initial failure of providing D.D. access to FAPE. Such an argument is advanced by the Defendant as a means of trying to counteract the dismal record of incompetence, the sheer lack of concern and the utter disservice that characterizes the delivery of the special education services in the District of Columbia. The Defendant eagerly compared this case to that of *Lesesne v. District of Columbia*, where the Plaintiff's counsel was admonished by the Court for delaying the process by refusing to meet for the purposes of obtaining attorney fees. See *Lesesne v. District of Columbia*, 2005 U.S. Dist. LEXIS 35699 (July 26, 2005). Those facts are wholly inapposite to the case at bar. Had the Hearing Officer heard the case on the merits he would have determined that the following: 1) that the Defendant owed the D.D more than seventy (70) hours of specialized instruction and related services because it not been provided throughout the school year; 2) that Dwight Thomas, the purported LEA representative, never had the authority to authorize the compensatory services agreed upon by the MDT team; 3) that even after Dwight Thomas received

the necessary authorization to grant the parent's request he failed to inform the parent; and 4) that the Defendant only offered to reimburse and not fund the program, thereby placing fiscal responsibility with the parent.

## 2. The Defendant Did Not Extend An Offer In Full Satisfaction of Parent's Claim

The Defendant argues that the Plaintiff had been given the proposal of having "immediate funding" at the summer program. *Defendant's Cross Motion and Opposition. R.at 3*. This assertion is lacking in veracity as there is nothing in the record to support such a contention. A close look at the testimony and documentary evidence reveals that the reason the parent did not accept the Defendant's offer had more to do with the fact that the Defendant's offer did not approximate the relief sought by the Plaintiff. The Plaintiff sought funding for placement at and transportation to Seeds of Tomorrow and, among other things, reasonable attorney fees. The Defendant offered to reimburse the Plaintiff after D.D. completed the program. In addition, the Defendant only agreed to reimburse the Plaintiff for a cost not to exceed $2100. This amount was not enough to cover the cost of the program never intended to resolve the complaint to the satisfaction of the parent. The resolution process requires that a parent and the local educational agency (LEA) meet to discuss those issue present in the complaint. [1] Present at that meeting is the parent and a decision maker who has

---

[1] (B) Resolution Session
    (i) Preliminary meeting. Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint
    (I) within 15 days of receiving notice of the parents' complaint;
    (II) which shall include a representative of the agency who has decision making authority on behalf of such agency;
    (III) which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and
    (IV) where the parents of the child discuss their complaint and the facts that forms the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use mediation process described in subsection(e).
    (ii) Hearing. If the local educational agency has not resolved the complaint, the due process hearing request may occur, and all applicable timelines for a due process hearing under this part shall commence.

the authority to bind the LEA in written settlement agreements.  It is true that the purpose of these meetings are to facilitate a non adversarial discussion between the parent and the LEA.  Encompassed in the meeting is a parents realistic expectation that the LEA has an interest and an obligation in satisfying the request a parent has set forth in her complaint.

In this case, the Defendant is claiming that it offered to fund D.D.'s attendance at Seeds of Tomorrow in the July 19, 2005 Resolution Session Meeting.  The hearing officer further claims that the Defendant had offered to resolve the complaint in full satisfaction of her claim.  The notes provided by the LEA demonstrate a wholly different scenario:

 "The LEA asked again if we are in agreement the student will attend Seeds of Tomorrow. Once the student has completed the 70 hours of comp ed.  The LEA will reimburse up to and not to exceed $2100." *See Administrative Record at page 19.*

The Defendant's contention that it offered to fund D.D.'s compensatory education is untrue. **The Defendant only offered to reimburse the Plaintiff once the D.D. completed the program(emphasis added).** Dwight Thomas, the LEA representative, testified that "DCPS has a policy on not necessarily paying for programs, but reimbursing for programs." *See Administrative Transcript of the Record; R. at 182.* An offer to reimburse is not an offer to immediately fund which is what the Plaintiff requested.[2]  The Defendant's attempt to interpose the Plaintiff in a

---

[2]**HEARING OFFICER**: Let me return to Ms. Sutto-Brock for one second. Would you give her the mic, please. Ms Sutton-Brock, your attorney asked you what was not in agreement and the last item you mentioned was reimbursement, could you be more specific as to what issues of contention that remained after that?
   **THE WITNESS**: I was unclear about and I didn't ask that during that time about reimbursement, because I had never heard it put that way, that DCPS reimburses the vendor. Usually, when I work with people who are providing services independently, DCPS funded it, so that, I didn't understand what was expected if the Parent was going to pay, would have been responsible for paying the vendor and then the vendor seek reimbursement or the Parent seek reimbursement, that was the thing.

vendor/vendee relationship is contrary to the established and customary practice. Plaintiff's counsel attempted to elucidate on this point:

**MS. GAMBALE**: Well, the Parent, first of all, never objected to them providing–
**HEARING OFFICER**: Then why was there no agreement?
**MS. GAMBALE**: Why was there no agreement? Because they didn't agree to provide all of the relief that the Parent was see[k]ing.
**HEARING OFFICER**: What was all the relief?
**MS. GAMBALE**: First of all, they didn't agree to make any transportation arrangements for the Student, which the Parent had specifically requested. Second, they were agreeing to reimburse after all the services were provided to the Student, which means that the mom would have to make arrangements with the company to deal with that up front, since they weren't agreeing to pay until after it was completed. And then, third, they were not agreeing to anything until the Parent withdrew the Complaint.

Therefore it clear that the Defendant never offered to "fund" the D.D.'s placement and transportation to Seeds of Tomorrow. By offering to reimburse the parent once D.D. had completed the seventy hours of compensatory education the Defendant knowingly and willfully placed an undue and unrealistic financial burden upon the Plaintiff, one that they knew she could not achieve. The hearing officer committed reversible error as there is no plausible or reasonable basis, legally or factually to support his decision to dismiss the claims of the Plaintiff with prejudice.

## CONCLUSION

WHEREFORE, the above stated reasons and argument Plaintiff respectfully request that this Honorable Court grant her motion for summary judgment and enter an order denying the Defendant's Motion for Summary Judgment.

Respectfully Submitted,

/s/
--------------------------------
Tilman L. Gerald [928796]
Roxanne D. Neloms[478157]
James E. Brown & Associates, PLLC
1220 L Street, N.W., Suite 700
Washington, D.C. 20005
(202)742-2000
(202)742-2098(fax)
***Attorneys for Plaintiffs***